UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
CLARENCE L. GRAY, JR.,

                         Plaintiff,                    09-CV-00584

              v.                                       **DECISION**
                                                       **and ORDER**
MICHAEL J. ASTRUE,
Commissioner of Social Security

                         Defendant.
_____

## Introduction

     Plaintiff Clarence L. Gray, Jr. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), claiming that the Commissioner of Social Security ("Commissioner") improperly denied his application for disability insurance benefits. Specifically, Plaintiff alleges that the decision of Administrative Law Judge Robert Harvey ("ALJ") was erroneous and not supported by substantial evidence in the record.

     The Commissioner moves for judgment on the pleadings pursuant to rule 12(c) of the Federal Rules of Civil Procedure, on the grounds that the ALJ's decision was supported by substantial evidence and contained no error of law. Plaintiff opposes the Commissioner's motion, and cross-moves for judgment on the pleadings. For the reasons set forth herein, I find that the decision of the Commissioner is supported by substantial evidence, and is in accordance with applicable law, and therefore, I grant the

Commissioner's motion for judgment on the pleadings, and deny Plaintiff's cross motion for judgement on the pleadings.

---

## **Background**

Plaintiff received Supplemental Security Income as a minor after a favorable decision under ALJ Nancy Battaglia on May 22, 1996. (Tr. 27). This income ceased in 2001, upon Plaintiff turning age 18, when his claim was reviewed under the adult standard. (Tr. 125-26)  A Re-determination of his case under the adult standard for disability resulted in a denial on February 23, 2004. (Tr. 27-44, 125-26).  Plaintiff did not appeal that decision.

On August 10, 2004, Plaintiff filed an application for Supplemental Security Income alleging that he was disabled due to bipolar disorder, a learning disorder and back impairments. (Tr. 83, 709).  The Social Security Administration denied Plaintiff's claim initially. (Tr. 45, 50-53).  Plaintiff requested a hearing and in a hearing decision dated November 20, 2006, the ALJ found that Plaintiff was not disabled. (Tr. 15-24, 54-55).  On April 9, 2007, the Appeals Council denied Plaintiff's request for review. (Tr. 6-14).  Plaintiff then filed civil action 07-CV-323-S, claiming that the decision of the hearing examiner was not supported by substantial evidence or contained errors of law.  On February 8, 2008, pursuant to a consent order, the District Court remanded the case for further administrative proceedings. (Tr. 685-88).

2

On remand, the Appeals Council consolidated the claim with a subsequent SSI application (which had been protectively filed by Plaintiff on May 11, 2007, and directed the ALJ to issue a new decision on the consolidated claims. (Tr. 691-92).

On January 15, 2009, Plaintiff, his mother, and his attorney appeared at a hearing before the ALJ. (Tr. 885-912). On February 4, 2009, the ALJ again found that Plaintiff was not disabled (Tr. 654-65). Plaintiff filed a request for review of the ALJ's decision which the Appeals Council denied on May 16, 2009, making the ALJ's decision the final decision of the Commissioner. (Tr. 650-53). On January 25, 2010, Plaintiff timely filed this action. (Plaintiff's Complaint).

## Discussion

## I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported

3

by substantial evidence. See Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988).

## II. The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record

The ALJ, in his decision, found that the Plaintiff was not disabled within the meaning of the Act from the alleged onset date of January 1, 1999.  (Tr. 657).  In doing so, the ALJ followed the Social Security Administration's five-step sequential analysis for

determining whether or not a clamant suffers from a disability. <u>See</u> 20 C.F.R. § 404.1520.[1]

Under step one of the process, the ALJ found that Plaintiff has not engaged in substantial gainful activity during the relevant period. (Tr. 659).   At steps two and three, the ALJ concluded that Plaintiff's bipolar disorder, personality disorder with anti-social features, and a learning disorder were severe within the meaning of the Social Security Regulations, but not severe enough to meet or equal singly or in combination, any of the impairments listed in Appendix 1, Subpart P of Regulations No. 4.  (Tr. 660).  The ALJ also concluded that Plaintiff's low back pain and anorexia were non-severe impairments.  (Tr. 660).

Further, at steps four and five, the ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform all exertional activities consistent with the broad world of work.  (Tr. 661), <u>See</u> 20 C.F.R. §416.967(a,b,c,d).  The ALJ found

---

[1]Five step analysis includes: (1) ALJ considers whether claimant is currently engaged in substantial gainful activity; (2) if not, ALJ considers whether claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities; (3) if claimant suffers such impairment, third inquiry is whether, based solely on medical evidence, claimant has impairment which is listed in regulations Appendix 1, and if so claimant will be considered disabled without considering vocational factors (4) if claimant does not have listed impairment, fourth inquiry is whether, despite claimant's severe impairment, he has residual functional capacity to perform his past work; and (5) if claimant is unable to perform past work or does not have any past relevant work, the ALJ determines whether claimant could perform other work. <u>See id.</u>

that while the Plaintiff had worked previously as a stock boy, as a busboy and doing assembly work, none of these temporary jobs rose to the level of substantial gainful activity. (Tr. 664). The ALJ ruled that it was not considered past relevant work. Therefore, in the fifth step, the ALJ considered Plaintiff's age, education, work experience, RFC, and a vocational expert's testimony regarding Plaintiff's additional limitations, to determine whether or not Plaintiff could perform any job in the national economy. The ALJ determined that Plaintiff was able to perform a significant number of unskilled jobs in the economy, and therefore was not entitled to Supplemental Security Income benefits. (Tr. 665)

Based on the entire record, including all relevant medical evidence, I find there is substantial evidence in the record to support the ALJ's determination that the Plaintiff was not disabled within the meaning of the Act.

## A. Medical and non-medical evidence in the record supports the ALJ's determination that Plaintiff was not disabled

Plaintiff's records indicate that he was examined and diagnosed with a learning disorder in 2001. (Tr. 208-14). IQ testing done in June 2006 produced scores which are consistent with low average intelligence. (Tr. 488). Plaintiff has also undergone counseling for bipolar disorder and a personality disorder with anti-social features. (Tr. 251). Psychiatric consultative examiners Dr. Thomas Ryan and Dr. Christine Ransom have confirmed these diagnoses. (Tr. 471, Tr. 490). Both Dr. Ransom and Dr. Ryan have opined that

6

Plaintiff, despite these disabilities, can perform simple tasks and maintain a schedule. (Tr.471, Tr. 489). Dr. Renee Baskin-Creel, a psychiatric consultative examiner, opined that Plaintiff had "poor attitude and judgement" which "did not appear to be significant enough to interfere with [claimant's] ability to function on a daily basis." (Tr. 333).

Plaintiff alleged that his back pain prevented him from doing work. (Tr. 894). A consultative examination and x-ray done by Dr. Christine Holland, on November 3, 2004, revealed that Plaintiff had mild scoliosis. (Tr. 328). Dr. Holland opined that Plaintiff had "behavior issues" but that he had no physical limitations. Id.

Plaintiff was treated for back pain by Dr. Bell in 2003, (Tr. 359) and referred to Dr. Hilburger in 2004. (Tr. 399). Dr. Bell stated that he did not believe back pain was causing a disability for Plaintiff. (Tr. 359). In a 2005 evaluation, Dr. Hilburger stated that "It appears [plaintiff's] complaints are well out of proportion to his physical finding and radiographic findings." (Tr. 398). Additionally, Dr. Hilburger stated in a 2005 report "It is quite obvious that the patient has another agenda here. He is young and able bodied. I believe that he could to [sic] do some type of work." (Tr. 392).

Plaintiff alleged anorexia. (Tr. 897). On September 8, 2008 Dr. Rahman, one of Plaintiff's treating psychiatrists, noted that

7

plaintiff suffered no problems with regard to "sleep, appetite or weight gain" and that he appeared "well nourished" (Tr. 852). Plaintiff's treating psychiatrist, Dr. Skiffington, along with psychological consultative examiners Drs. Baskin-Creel, Ryan, and Ransom, did not make any mention Anorexia in their opinions. Plaintiff testified that he was six feet tall, and weighed 117 pounds but did not suffer Anorexia. (Tr. 894).

Considering Plaintiff's testimony and medical records, the ALJ correctly determined that Plaintiff had bipolar disorder, personality disorder with anti-social features, low back pain, anorexia and a learning disorder. (Tr. 660).

### i. The ALJ correctly assessed that Plaintiff's mental impairments were not severe enough to establish disability

The ALJ determined that Plaintiff's mental impairments did not standing alone or in combination with his other impairments, meet or exceed the Act's definition of disability. To establish that mental impairments are disabling, a Plaintiff must demonstrate that his mental impairments caused at least two of the following: (1) marked restrictions of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. See 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.04B.

The ALJ found that Plaintiff had only a mild restriction in his daily activities.  Plaintiff stated that he did his own laundry,

drove his car approximately 200 miles per week, shopped, showered, dressed himself and occasionally vacuumed or washed dishes. (Tr. 139, 141, 143, 729, 733, 631, 730).  The ALJ determined that Plaintiff had moderate difficulties in social functioning, had mild difficulties in concentration, persistence, or pace, and had experienced one to two episodes of extended duration. (Tr. 660).

In light of the objective medical and non-medical evidence, and Plaintiff's subjective complaints, I find that there is substantial evidence on which the ALJ could correctly conclude that the Plaintiff does not suffer from a disabling mental impairment.

## 1. The ALJ properly applied the "Treating Physician Rule"

Plaintiff argues that the ALJ did not give proper weight to treating psychiatrist, Dr. Skiffington's opinion concerning the severity of Plaintiff's mental health impairments, as detailed in an August 24, 2005 report. (Plaintiff's Memorandum of Law  "Pl. Mem." 10).  Dr. Skiffington's report diagnosed Plaintiff with bipolar disorder and a personality disorder.  (Tr. 419).  Additionally the report stated that Plaintiff was "unemployable" and was "unable to work at this time due to psychological factors."  (Tr. 413, 419). The ALJ found the report inconsistent with other medical evidence and assigned it little weight.

Social Security Act Regulations outline the treating physician rule with the following text:

> Generally, we give more weight to opinions from your treating sources ... If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically

9

> acceptable clinical and laboratory diagnostic techniques
> and is not inconsistent with the other substantial
> evidence in your case record, we will give it controlling
> weight. When we do not give the treating source's opinion
> controlling weight, we apply [various factors] in
> determining the weight to give the opinion.

20 C.F.R. § 404.1527(d)(2). Further, the ALJ must establish "good reasons" for the weight assigned to a treating physician's opinion. Id.

The factors that an ALJ must apply when determining whether a treating physician's opinion is given controlling weight include: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) (citing §§ 404.1527(d)(2) and 416.927(d)(2)).

An ALJ's omission of the treating physician rule's factor analysis on the face of an opinion, however, is not always grounds for a remand for further proceedings. See Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004). This is particularly the case when the treating physician's opinion is inconsistent with other substantial evidence in the record. See Id.

The ALJ found Dr. Skiffington's report inconsistent with the record as a whole. Dr. Skiffington's report stated that Plaintiff had a problem with anger, was quite hostile, had substantial social skill deficits, was bipolar, anti-social and was "unemployable ... due to his substantial mental health problems" (Tr. 419). Dr. Skiffington

10

also reported that Plaintiff's current Global Assessment of Function[2] ("GAF") score is 32. (Tr. 419).[2]

The ALJ was required to give "good reasons" when granting little weight to Dr. Skiffington's opinion. Dr. Skiffington's assessment was based on one examination of the plaintiff.  This assessment was contrary to the opinions of three other psychologists, Drs. Ransom, Ryan and Baskin-Creel.  While the ALJ did not address all of the §§ 404.1527(d) and 416.927(d) factors, I find that the ALJ sufficiently explained that Dr. Skiffington's opinion was inconsistent with the overall record and lacked a longitudinal history of treatment.  (Tr. 664).

Plaintiff argues that the ALJ erred in giving little weight to the opinion of Dr. Thomas Madejski.  (Pl. Mem. 10).  Dr. Madejski completed two reports, each report was titled "Medical Examination for Employability Assessment, Disability Screening, Alcoholism/Drug Addiction Determination."  In each form, Dr. Madejski checked off that Plaintiff was very limited in his ability to stand, lift/carry, push/pull/bend, and in his ability to function in a work setting at a consistent pace. (Tr. 846).  The reports completed by Dr. Madejski were form reports composed of checklists and fill-in-the-blank

---

[2]See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed, 2000).  A GAF between 31 to 40 means some impairment in reality testing or communication.(e.g., speech is at times illogical, obscure or irrelevant) or major impairment in several areas, such as work or school, family relations, judgement, thinking or mood.  Id.

statements. Id. "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1067 (3d. Cir. 1993). Additionally, Dr. Madejski supplied only the two forms, which contained checks and only a few written words. (Tr. 846). As such, I find that ALJ properly gave little weight to Dr. Madejski's opinion, as it was not supported by objective clinical evidence and was contradicted by the assessments of Dr. Holland, Dr. Hilburger and Dr. Bell.

Plaintiff argues that the ALJ erred in assigning great weight to consultative examiners, Drs. Ransom, Ryan and Baskin-Creel, because these doctors were non-treating sources. (Pl. Mem. 10). A written report of a consultative examiner can constitute substantial evidence. Richardson v. Perales, 402 U.S. 389, 402 (1971). A consulting examiner's opinion can be given substantial weight when it is consistent with other evidence in the record. Id. See also Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995); Monquer v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983). Here, the consultative examiners reports were found to be more consistent with other evidence in the record.

I find that the ALJ's decision was supported by substantial evidence and the treating physician's rule was not violated.

**2. The ALJ was not required to further develop the record.**

Plaintiff argues that the ALJ erred by failing to recontact Dr. Hilburger, Dr. Rahman and nurse practitioner Gilsinan.

Plaintiff argues that the ALJ erred by not assessing treating physician Dr. Rahman's June 28, 2006 report.  (Pl. Mem. 6).  This report stated that the Plaintiff had marked limitations with the ability to make judgments on simple work-related decisions, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting.  (Tr. 494-95).  Plaintiff argues that the ALJ failed to recontact Dr. Rahman for the purpose of getting more specific information. (Pl. Mem. 7).

The ALJ is required to obtain additional evidence only if the ALJ cannot decide whether a claimant is disabled based on the existing evidence. 20 C.F.R. § 404.1527(c). "Where there are no obvious gaps in the administrative record and the ALJ already possesses a 'complete medical history,'" the ALJ is under no obligation to recontact a physician.  Rosa v. Callahan, 168 F.3d 72, 79, n. 5 (2d Cir. 1999).

While the ALJ did discuss multiple records provided by Dr. Rahman, he did not discuss the June 29, 2006 report.  (Tr 663-64).  The ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  See Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983); Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981).  The majority of Dr. Ramhan's June 29, 2006 was consistent with the ALJ's mental RFC finding, except those marked restrictions noted.  The ALJ properly relied on substantial evidence which consisted of other medical sources that provided assessments compatible with the ALJ's assessment of Plaintiff's mental RFC.

Plaintiff argues that the ALJ erred by failing to recontact Hilburger regarding ambiguity in his medical opinion. (Pl. Mem. 9). The ALJ noted Dr. Hilburger signed a prescription slip on December 16, 2004 stating "Patient unable to work due to back pain." (Tr. 370). However, Dr. Hilburger's subsequent records indicate an entirely different assessment.  On June 20, 2005, Dr. Hilburger stated "It is quite obvious that the patient has another agenda here.  He is young and able bodied.  I believe that he could to (sic) do some type of work."  (Tr. 392).  The ALJ properly decided that Dr. Hilburger's opinions were not ambiguous.  (Tr. 663). Therefore it was not necessary to recontact Dr. Hilburger to clarify his opinion.

Plaintiff argues that the ALJ erred by failing to discuss or recontact Patricia Gilsinan, a nurse practitioner, regarding her opinion. (Pl. Mem. 6).  In a May 2007 opinion, Ms. Gilsinan noted that plaintiff was "totally disabled from psychiatric sx." (Tr. 860).  However, less than a year later, in an April 2008 opinion, Ms. Gilsinan noted "no medical probs that I can see except for some acid relux." (Tr. 862).  The ALJ properly disregarded the opinion of Ms. Gilsinan.

In light of the ALJ's assessment of Plaintiff's medical impairments and credibility, I find that there is substantial evidence in the record to support the ALJ's finding that Plaintiff could perform simple, unskilled work at all exertional levels. Based

14

on these limitations, the ALJ properly determined that there were jobs available for the Plaintiff in the national economy.  (Tr. 665).

I find that there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff was not disabled within the meaning of the Act at any time on or after Plaintiff's alleged onset date.

**B. The ALJ properly found that Plaintiff retained the ability to perform work with some limitations**

The ALJ determined that Plaintiff's mother's testimony and other subjective evidence was inconsistent with the record.  (Tr. 661-62). The ALJ properly concluded that Plaintiff's subjective complaints were inconsistent with his activities of daily living, which included: cooking, doing dishes and laundry, vacuuming, and driving 200 miles a week.  (Tr. 662).

Plaintiff argues that because of his inability to hold a job, a finding of disability is warranted.  (Pl. Mem. 12).  The ALJ properly considered Plaintiff's prior short-term employment and found that it did not constitute past relevant work.  (Tr. 664).

Dr. Ransom, Dr. Baskin-Creel, Dr. Ryan and Dr. Holland all determined that Plaintiff could perform physical and/or mental physical work-related activities compatible with unskilled work at all exertional levels.  (Tr. 662-64).  The ALJ relied on these opinions.  The ALJ considered the claimant's age, education, work experience and residual functional capacity.  The ALJ properly found, considering these factors, that plaintiff could perform work

which existed in significant numbers in the national economy.  The ALJ also properly considered Rule 204 of the Medical-Vocational Guidelines, which address nonexertional limitations, and found that Plaintiff was not disabled.  (Tr. 665).

I find that there was substantial evidence in both Plaintiff's medical records and in Plaintiff's testimony to support the ALJ's assessment that Plaintiff could perform work.


## CONCLUSION

For the reasons set forth above, I grant the Commissioner's motion for judgment on the pleadings.  Plaintiff's cross-motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

DATED: June 23, 2011
       Rochester, New York